FRANCIS B. WALLACE AND JOHN H. KETCHAM, APPELLANTS, *v.* THE LONG ISLAND RAILROAD COMPANY, CONRAD POPPENHUSEN, ADOLPH POPPENHUSEN, HERMAN C. POPPENHUSEN, ALFRED L. POPPENHUSEN, HERMAN FUNKE, MORRIS FRANKLIN, E. B. HINSDALE, WILLIAM A. HAVEMEYER, WILLIAM KEVAN, E. B. STONE, EDWARD E. SPRAGUE AND D. N. ROPES, THE FLUSHING, NORTH SHORE AND CENTRAL RAILROAD COMPANY, AND THE SOUTHERN RAILROAD COMPANY OF LONG ISLAND, RESPONDENTS.

*Railroad — lease of competing road — connecting railroads, what are — contract between corporations having the same directors.*

By chapter 444 of 1859, The Long Island Railroad Company was authorized to take a lease of any railroad that might be connected therewith. *Held,* that, under this provision of the statute, a lease might be taken of a competing road, provided that, when united, the two roads were capable of forming continuous lines.

That it was not necessary that the leased road should connect with the Long Island road at its terminus. It might be a road which intersected the latter road at any point.

That such a lease of a competing line would not be void under the exception contained in chapter 917 of 1869, authorizing a consolidation of the stock, franchises, etc., of separate corporations, except of railroads running on parallel or competing lines.

The fact that the same persons were directors of the leasing and leased railroad, although it might entitle either corporation to do so, did not justify one or more stockholders in bringing an action to have the contract declared void.

APPEAL from an order dissolving a preliminary injunction granted to the plaintiffs herein and denying their motion to continue the same.

The plaintiffs individually and on behalf of themselves, and of such other stockholders and bondholders of the Long Island Railroad Company, as might elect to come in and contribute to the expenses of this action, showed among other things, that the plaintiffs were interested as stock or bondholders, or both, in the Long Island Railroad Company ; also, in the New York and Rockaway Railroad Company, which had been leased and its bond guaranteed by the Long Island Railroad Company ; also, in the Smithtown and Port Jefferson Railroad Company, which had been leased and its bonds guaranteed by the Long Island Railroad Company, or in one or more of the aforesaid companies.

That on May 3, 1876, the Long Island Railroad Company made an agreement for the lease of the Flushing, North Shore and Central Railroad Company, and about the same time a similar contract, for the leasing of the Southern Railroad Company of Long Island, the Long Island Railroad Company paying each of the two last named companies an annual rent greatly exceeding the net earnings of said roads respectively.

It was further claimed that the Flushing, North Shore and Central Railroad Companies and the Southern Railroad Company of Long Island were not connecting roads with the Long Island railroad.

That several of the parties defendant in this action, who are directors of the Long Island Railroad Company, are also directors and officers in both the Southern Railroad Company of Long Island and the Flushing, North Shore and Central Railroad Company.

That the defendant, Conrad Poppenhusen, and others, acting in concert with him, have caused a meeting of the stockholders of the Long Island Railroad Company to be called, and he, together with other stockholders of said company, holding sufficient stock so to do, proposed and threatened that they would at such meeting take such action as would result in the said Long Island Railroad Conpany guaranteeing the payment of the principal or interest, or both, of the said bonds of the Flushing, North Shore and Central Railroad Company, and also of the Southern Railroad Com-

pany of Long Island, as it was provided in the aforesaid agreements of lease might be done.

That such guarantee would result in greatly depreciating the stock and bonds belonging to the plaintiffs and others.

The complaint asked that the Long Island Railroad Company, its agents and the other defendants in this action be enjoined from carrying out the agreements above referred to.

A temporary injunction, with an order to show cause why the defendants should not be further restrained during the pendency of the action was granted; and on the return day thereof, the injunction was vacated, Judge GILBERT writing the following opinion:

GILBERT, J.:

By chapter 444 of the Laws of 1859, the Long Island Railroad Company were "authorized to take and accept a lease of any railroad on Long Island then connecting with said Long Island railroad, or that might thereafter be connected therewith, and to run and operate and hold the same under the general powers and subject to the liabilities of the charter of said Long Island Railroad Company, and to become the purchaser in whole or in part of the stock or bonds issued or to be issued by said connecting road or roads, built or to be built, or to guarantee the payment of said bonds, principal and interest, if the giving of such guarantee shall have been approved at a meeting of the stockholders of said company, by two-thirds interest of the stockholders attending said meeting." The requisite consent to the giving of the guarantee has not been obtained, and the company disclaims any intention of availing itself of the power on that subject granted by the act. There is, therefore, no occasion at present for an injunction restraining the giving of the guarantee. The statute cited, as it seems to me, conferred upon the company ample power to take the leases of which the plaintiffs complain. It sufficiently appears that the railroads leased connect with the Long Island railroad. All of them actually intersect it. A competing road is not on that account a non-connecting road, nor does the language of the statute embrace an exception of that kind. Such connection need not be at a terminus or at any particular place. It is enough that they are united so as to be capable of forming continuous lines. Nor is the power qualified by chapter 917 of the Laws of 1869.

That statute authorizes a merger and a consolidation of the capital stock and franchises, as well as the property of separate corporations, and the ninth section merely contains a limitation of the authority granted by that act. Its language is " no companies or corporations of this State whose railroads run on parallel or competing lines, shall be authorized by this act to merge or consolidate." That prohibition cannot effect the specific power to take leases granted by the act of 1859.

The respective lessors and lessee, it is true, operated parallel and competing lines, and the main object of all the parties to the leases, no doubt, was to get rid of a competition which had proved injurious to the interests of each. Still those leases did not work a merger or consolidation of the capital stock or franchises of either corporation, and so are not dependent upon the power granted by the act of 1869, but each lease is a legitimate exercise of the power granted by the act of 1859, notwithstanding the effect of it is to merge, during the term thereof, the lessor and lessee into one corporation, so far as the use of the property belonging to them respectively is concerned. I cannot say that the directors of the Long Island Railroad Company have abused the power mentioned, or that they fraudulently entered into the leases in question. They may have erred in judgment, but the court has no power to control the lawful exercise of the discretion vested in them as officers of the corporation. I see no reason for imputing to them bad faith or fraud. That being so, I am of opinion that a stockholder in that company is not entitled to have the leases avoided in opposition to the wishes of the parties to them. The directors are no doubt, in one sense, trustees of the stockholders, but, primarily, they are trustees of the corporation. If the corporation, acting with the approval of the holders of the major part of the stock thereof, prefer to abide by the leases, they cannot be avoided on the complaint of a minority of the stockholders against the will of the corporate body so manifested, and in absence of evidence that the holders of the major part of the stock disapprove the acts of the directors, their approval thereof must be presumed. In other words, the leases in question, although *infra vires*, may be voidable at the election of the corporation. But the plaintiffs are not entitled to make such election in behalf of the corporation.

Nor can the court compel the corporation to make the election against the will of the holders of a major part of the stock thereof. The management of the concerns of the corporations has, by the charters, been committed to the directors thereof respectively, and their acts within the corporate powers, done in good faith, are valid and binding, not only on the corporation, but on each stockholder thereof. The rule that persons acting in a fiduciary capacity shall not directly or indirectly make any profit by means of such acts, or be interested in contracts made by their principals, undoubtedly applies to directors of corporations. It is a valuable principle, and ought not to be impaired by any subtle or refined distinctions. Still the mere fact that the same persons were directors of the corporation which made the lease, and of that which took it, is not of itself sufficient to avoid the contract at the instance of one or more stockholders against the will of the corporation. That fact alone might entitle either corporation to avoid the lease, but I apprehend it does not give that right to a stockholder. In the cases cited on behalf of the plaintiffs, and in all the cases I have met with, where contracts have been avoided on that ground, the relief was sought or assented to by the corporation. Here all the corporations whose acts are assailed insist that they are valid and mutually beneficial, and that they be upheld. It seems to me, that to grant the injunction asked for would be to annul the acts of trustees against the wish of their *cestuis que trust*, or the acts of agents which have been ratified by their principals, and which the latter now, through their counsel, before the court, insist shall be carried into effect. I know of no principle which would warrant such a proceeding.

The motion to continue the injunction must be denied, and the injunction must be dissolved with ten dollars costs.

*Fullerton, Knox & Crosby*, for the appellants.

*Hinsdale & Sprague*, for the respondents.

DYKMAN, J. :

Order appealed from affirmed at General Term on the opinion of the Special Term.

BARNARD, P. J., concurred; GILBERT J., did not sit.

Order denying injunction affirmed upon opinion at Special Term.